FALCON STEEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11197. Promulgated March 28, 1929.

*H. M. Darling, Esq.,* for the petitioner.
*Shelby S. Faulkner, Esq.,* for the respondent.

1134

1136

Love: There is at issue the lone question as to whether petitioner is entitled to have its profits-tax liability determined under the provisions of section 328 of the Revenue Act of 1918. To establish such a right, the petitioner must bring itself within the provisions of one or more of the subdivisions of section 327. This it has sought to do by presenting proof of facts which it believes indicate the existence of abnormal conditions affecting both income and capital and bring it within the category of cases referred to in subdivision (d) of that section.

Petitioner's claim for classification as a special case is based upon two grounds, which are substantially as follows: (1) That statutory invested capital is considerably less than the actual capital employed in the production of the income, by reason of (a) prorating cash payments for capital stock from the respective dates of such payments, and (b) the exclusion of borrowed money; and (2) that the Commissioner is unable to determine a proper allowance for depreciation.

Operation of petitioner's mills was begun on March 1, 1920, and all of the income was earned between that date and the close of the fiscal year, a period of four months. The total cash paid in for capital stock to March 1 amounted to $1,952,650. Prior to that date the petitioner had received a cash bonus of $15,000 from the City of Niles. The Commissioner prorated the cash payments for capital stock from the respective dates of such payments, and, as a result, determined an invested capital of $1,349,622.11, which is

$618,027.89 less than the actual cash paid in at the date operations were begun. The petitioner contends that this situation reflects an abnormality in its invested capital of such a character as to bring it within the scope of subdivision (d) of section 327.

The situation of which petitioner complains results from a normal working out of the statutory provisions as to the computation of invested capital. It is true that invested capital, as determined by the Commissioner and not contested by petitioner, represents but approximately 63 per cent of the actual paid-in capital at the date operations began, but this allowance is also in respect of a taxable year during which petitioner operated for only one-third of the year, or on a time basis of only $33\frac{1}{3}$ per cent. It is perhaps unfortunate from the petitioner's standpoint that it elected to call the subscriptions to its capital stock at irregular intervals during the year. Had it called for payment of these subscriptions at the very outset, it would have been entitled to include the full amount thereof in invested capital, and the situation of which petitioner complains would not have been created. It is perhaps equally unfortunate that it crowded into the last four months of the year operations of large proportions which were productive of large income. But we apprehend that the earning of a high rate of profit upon a normal invested capital affords no ground for relief under the special relief provisions of the statute. It is true, too, as petitioner argues, that it might have elected to end its first fiscal year on February 29, 1920, the day before operations began, in which event the income earned from March 1 to June 30 would have been accounted for in the fiscal year 1921, for which year it would have been entitled to the full amount of capital paid in to March 1, an advantage which would have resulted in a much lower tax upon the income earned from March 1 to June 30, 1920. In each instance, the course which petitioner took was of its own choosing, and it must be assumed that it took that course with its eyes open to the responsibilities which it would incur under the taxing statute. If it develops now that it took a course less advantageous to it than another might have been, it must abide by the result, for there is no remedy in the law to correct its errors of judgment. Without unusual circumstances no abnormalities can exist which may be corrected by application of the special relief provisions, and we find no unusual circumstances in the facts presented to us which adversely affect invested capital.

Claim for relief on the ground of exclusion of borrowed money from invested capital must also be denied. While we have held heretofore that where the capital employed is in a large part borrowed, and the borrowed capital is a substantial income-producing factor in the business, the exclusion of such borrowed capital from invested capital may create an abnormality within the meaning of

1138

section 327, *G. M. Standifer Construction Corporation et al.*, 4 B. T. A. 525; this petitioner can not bring itself within the scope of that decision. Borrowings were made by the petitioner during the last four months of the year. While in the aggregate, these borrowings amount to a substantial sum, yet the average for the four-month period is but $49,629.53, and for the entire year the average is but $37,507.80 which is less than 3 per cent of the statutory invested capital. Under these circumstances it can not be said that the capital employed was in a large part borrowed or that borrowed capital was a substantial income-producing factor.

The third ground presented as the basis of the claim for special assessment is that the Commissioner is unable to determine a proper allowance for depreciation. During the four months of operation the plant appears to have been operated beyond the safety factor for strains on the equipment of green mills, resulting in a fairly general breakdown of equipment at most important points. The production during that period amounted to 2,515,209 tons, which represents about five and one-half months of production of "broken-in" mills operating at generally accepted normal capacity. The Commissioner determined the wear, tear and exhaustion of physical assets sustained during the year, and made allowance therefor in computing net income. That is an inference we draw from the stipulation by the parties that the Commissioner's depreciation allowance is not excessive in amount. What the amount of that allowance is we do not know. We have not been given any facts whatever which would indicate that the allowance by the Commissioner was not a reasonable one as contemplated by the statute. The petitioner rested its case in this respect upon the testimony of its witnesses that the extent of the breakdown of equipment in the plant could not be measured in dollars and cents, mainly because of the difficulty of ascertaining the cost of broken parts, although, in its return, it claimed a special deduction of $21,798 for broken mill liners and housings. The Commissioner's determination as to the depreciation sustained is entitled to stand unless there is convincing proof of error, and there is no such proof in this case. As the Commissioner has made a determination as to the amount of depreciation sustained, and in the absence of proof of error in that determination, we can not say that the Commissioner is unable to determine a proper allowance for depreciation.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

PHILLIPS concurs in the result.

TRUSSELL and MILLIKEN dissent.

TRAMMELL, dissenting: I agree that the determination of the invested capital in this case is the normal application of the statute. It is not contended otherwise, but the relief afforded by sections 327 and 328 is applicable to cases where the normal application of section 326 on account of abnormal conditions affecting capital or income works an exceptional hardship evidenced by a gross disproportion between the tax computed without the benefit of those sections and the tax computed by a comparison of representative corporations. We do not answer the question by saying that the invested capital is the result of the normal application of the statute. If this were true, it is difficult to imagine a case coming within the provisions of section 327 (d). In my opinion, the taxpayer suffered an exceptional hardship due to abnormal conditions affecting capital.

---

GREEN, dissenting: I am unable to concur in the prevailing opinion. I realize, of course, that section 327 (d) is a relief provision and that, as such, it should be construed strictly, but it seems to me that it is here being so strictly construed as to defeat its very purpose. The petitioner's productive operations started on March 1, 1920, at which time there had been paid in for stock $1,952,650. During the remainder of its fiscal year, which ended on June 30, there was paid in for stock, $146,750, and the total cash paid in for the year was $2,114,686.81. In the computation of the tax, the Commissioner averaged the invested capital over the entire year, with the result that the tax was computed upon the basis of an invested capital of $1,349,622.11; that is to say, he used in the computation of tax, an amount which was $765,064.70 less than the amount actually invested in the business. As the result of this, the tax is $40,000 more than it would have been if the invested capital had not been prorated. His action in this respect was quite in accordance with the requirements of the statutes. Petitioner's income for the fiscal year was $769,997.57, which amount, earned during the last three months of its taxable year, is approximately three times its income for the whole of its next taxable year. This abnormally large earning for the short period is, in its self, no ground for special assessment, but it does seem to me that the computation of the tax on such large earnings, using as one of the factors an invested capital greatly reduced by proration, does give rise to the abnormal conditions referred to in the statute. Section 327 (d), in part, reads as follows:

This subdivision shall not apply to any case (1) in which the tax (computed without the benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital.

It seems to me that the provision quoted is limited in its application to a situation where there is a " normal invested capital." The statute prescribes that invested capital shall be averaged, but there is no provision saying that when the invested capital has been thus averaged, it is " a normal invested capital." Here we have a " high rate of profit upon " an abnormal " invested capital," and I believe that this petitioner is entitled to the benefits of the relief provision. I would not have it thought that what I have just said would be in any way applicable to the situations arising from the proration of the ordinary additions to invested capital, but it does seem to me, where there are sales of the stock of a corporation pursuant to the plan of organization, and the Commissioner, of necessity, has averaged such corporation's invested capital, and where the earnings of that corporation for the brief period of its existence have been unusually high, that it is manifestly unjust to compute the profits tax without regard to the relief provisions, which it seems to me were written into the statute to care for this and other unfortunate situations, which would make the application of the statute, without the relief provisions, wholly unfair to the taxpayer.